Good morning, Your Honors. Matthew Metz representing Julio Romero and the plaintiff class in this matter. This case is an appeal from a motion to dismiss Judge Jay's court. We contend that Judge Jay really did not apply the proper legal standard in evaluating a motion to dismiss, which is really that it has to be beyond a doubt that the plaintiff cannot prove the claim. That's Connelly v. Gibson. And this is really a breach of contract case, a simple breach of contract case. The contract is It's really a very simple breach of contract case. Where is the contract? Okay. Well, the contract is set forth fairly well in Exhibit Record 15A, set colorful, fold out. And what the plaintiffs contend that the contract was, was that they were supposed to undertake the activities in blue, which is the community-driven activities, and the foundation was to do the red activities. The plaintiffs proceeded to carry out as called for in this contract until March 12, 2003. So they're already well into their activities that are called for under the timeline. And it's hard to see it on here, but there's actually they set up eight different committees. They had thousands of hours of meetings dedicated to this. And the promise that the foundation made was that we are going to provide the planning committee's $1.25 million to allocate to hire consultants and do various activities necessary to create the community plan. And the plaintiffs were well along carrying out these tasks with the understanding that they would have the money available to do them when, for unknown reasons, the foundation got cold feet and decided to terminate the plan, provide no compensation, and basically throw away the thousands of hours of work that the plaintiffs had put into the project. And so we're alleging that there was a unilateral contract created. A lot of community activities develop volunteer groups, and the volunteers do a lot of work, spend a lot of time, spend a lot of money sometimes, travel, and overnight expenses, going to meetings, and so forth. In this case, did they plead any claims reasonably expected to be reimbursed for items, line items, and so forth, that were in reliance on this alleged contract? Yes, yes, we did. There were travel expenses, other expenses that the... Well, how did the judge took that away from you, apparently, and turn it into a trust case, which seems to be at the heart of the difficulty? He gave you leave to amend, didn't he? No, he did not. Well, it was dismissed without prejudice, wasn't it? Yes, he did. 12B6 dismissal without prejudice, wasn't it? After he reframed the question to be a trust question. Well, at that point, there would have been no way for us to bring the case other than to involve the Attorney General in the lawsuit. But they're saying, if it indeed was a trust, and I'd like to address that question, the plaintiffs were truly without remedy. But I'd just like to address this issue about the volunteer work. The analogy I've drawn in the complaint is, let's say there's a community car wash, okay, and it's for the benefit of the homeless. And someone drives their car in, and it costs $10. Someone drives their car in, half the car is washed, and then they say, you know what, forget it, and pull out. You know, but those volunteers are working on behalf of the community, and the money is still owing them. Well, there's a quantum merit case there for value received. And if they can catch the guy, they can get him in a small place and get their $10. But really the same logic applies to a contract. They sign a car wash $10, and they go in and have the contract and get their car washed. There's a contract there. What part of this claim was it ever identified for the trial court, the parts of this claim that were not the pure act of volunteers, of public-spirited citizens who were out trying to do something for the community? If I understand Your Honor correctly, are you asking whether there was a personal benefit that the plaintiffs sought to gain from it? Well, it is my expectation that they would be reimbursed for expenses that they sustained in their part of this effort, which never was completed, so that we never find out whether there was a pot of gold at the end of the rainbow, because we never got to the end of the rainbow. Well, as I say, it wasn't – yeah, I mean, those expenses are relatively minimal, although they are very important that, for example, people that went to numerous, numerous meetings at night that people had to hire babysitters for, no, they didn't expect that they would personally be compensated, but they expected that the fruits of their labors would be realized, which was the plan. If I may also, Your Honor, is I'd like to address the charitable trust defense. You know, there's really no traces of a trust in this case. There was never money clearly set aside. There's no trust document. There were never trustees named. This whole concept of a trust is something that was invented after the fact as a way of denying liability. And to the extent that there was a trust, even if it could be found one, the plaintiffs were clearly in the position of co-trustees or trustees, and that they were the ones that were supposed to direct the expenditure of the funds. They were the ones that were going to choose the consultants and, you know, hold the meetings and determine how the money was to be spent. And so they definitely had a role there. The cases cited by the appellee in this case are primarily cases where they're just, you know, get some benefit in a trust, but this is not the case here. These guys are actively involved in the administration of the funds. I'd like to reserve the balance of my time, if I may. Thank you. Good morning. May it please the Court. I'm Thomas Kimmer. I represent the Northwest Area Foundation. I think the most accurate characterization of the plaintiff's complaint is that the complaint seeks to enforce a charitable trust that the plaintiff then would take control of. Under Washington law, a charitable trust is real or personal property held by an entity intended to be used for charitable purposes. Well, is that what was pled? I don't quite understand where the charitable trust comes in. The charitable trust. I know the district court talks about it. In this case is the $1.25 million that the complaint alleges was to be used to develop a poverty reduction plan under the community ventures program in the Yakima Valley. That's what the complaint alleges. And the complaint then alleges that the foundation didn't do it, didn't spend the $1.25. The money that it set. But did the complaint allege a theory of charitable trust? In essence, it did. It did not use that word. But that's the conclusion the trial court came to. Is that the only theory that is in the complaint? That is the. I mean, it doesn't say charitable trust. I thought that there was – I thought they were trying to say that there was an implied contract here to do it. There are four causes of action upon which they try to hang the relief that they want, breach of contract, promissory estoppel, unjust enrichment, and a violation of the Washington Consumer Fraud Act. But those really don't fit. What they're really trying to do is to enforce a charitable trust. They allege that a large and indefinite group was to benefit from this activity. Is there a risk here for a trust? $1.25 million. Where is it? It's held by the Northwest Area Foundation, and they allege that the Northwest Area Foundation is obligated to spend it on this program. Wouldn't it take an equity court declaring a resulting trust to create the trust? There's no instrument creating any trust. There's no instrument creating it, but I – It's a figment of somebody's imagination until a court declares a resulting trust. Well, that's got to be – it's not ex delicto. That would be a constructive trust. It's got to be done by some entity that does some act that has the effect of creating a resulting trust. What was the act here that created the trust? Well, I believe, Your Honor, that the concept of a charitable trust and what that brings with it in terms of how it's enforced is a legal theory that fits these facts. That's what you have, even though there's no trust instrument. But that's not the theory they pleaded. Let me ask you a hypothetical and see if this will help clear up my thinking anyway. Let's go back to the car wash. I thought that worked for me just fine. And if I have a lot of money to give away, but I want to encourage the recipients of my charitable giving to help themselves a little bit, I could say, you know, anyone who comes and works a four-hour shift in this car wash, I will give them $10,000 and then they can, you know, go build a life. And someone comes in and works a four-hour shift diligently and says, no, I want my $10,000. There's nothing trustlike about that. It's basically a charity agreeing to do something. Why wouldn't, in my example, I be bound, if someone accepts that unilateral contract in my example, to go ahead and give them the $10,000 if they fulfill the condition? I'll grant you this, Your Honor. A trust could enter into a transaction where it creates a unilateral contract. It could even more specifically, I'm not sure your example is quite specific enough, but it could do that. That is not what it did here. Well, it could induce people to rely on their promise to pay the money. And if it could, the question really here is whether it's pleaded, not whether it can be proved. You said that's not what they did here. Well, I don't know what they did. All we know now is whether they get to go past the pleading stage to the next stage, whatever that may be. And they may very well lose by the time you get to summary judgment. But I guess I have difficulty understanding why we shouldn't just take the complaint at face value and say, okay, the defendant had a lot of money and they promised to give it to us if we would do X, and we did X and they didn't give us the money, and so we get to go fight about that. Your Honor, our position is what the foundation did was create a charitable trust by setting this money aside for the charitable purpose that would benefit the Yakima Valley. Now you have one person coming in and challenging, hey, you didn't do this quite right. You didn't run your charitable program quite right. The attorney general under Washington law is supposed to have that responsibility because he's answerable to the public. Romero didn't claim to be a key time player. That's correct. Now we have, and this is really very important in the charitable philanthropic community. We have organizations like the Northwest Area Foundation that are involved in innovative community action programs. Now one person can come in and allege a class action, although a class action adds nothing to his standing, and in effect take over the foundation's program. The prayer for relief in this case is we want to take that money and establish a trust that we, that Romero, will administer, a trust for community benefit. Now that is nothing short of one individual with a lawyer coming in and supplanting the Northwest Area Foundation, taking control of its money and directing it to its special interests. The attorney general has that ability to do that under Washington law, but the attorney general is answerable to the public. Well, about 100 years ago, a lawyer, a common law lawyer, would have come in with an epitodus assumption for working labor done and expected to get paid reasonable value out of it. And that would be about all he'd have for a registered complaint. Now this comes in with this theory of using a stoppel as a sword instead of a shield and is trying to create a cause of action based on promissory stoppel, but he doesn't. He never took any courses in equity, so he can't complete it. Well, that and the unjust enrichment doesn't work here because the plaintiff and the class he seeks to represent never sought personal compensation and don't get the complaint. This plaintiff actually came in with a bill, itemized account, account status. So many nights at the Holiday Inn and Prosser, while they were going to a meeting to plot and connive and scheme to put this thing together, and he had all this itemized and he says money had, or working labor done, money spent on the account and so forth. Where's your check? Now, how would you answer that? Well, that's not this case. That's not alleged in this complaint. The relief they seek here is collective in nature. They want the $1.25 million to administer their own trust. Not entirely. The Quantum Merriwood claim says they want the reasonable value and the services that have actually been rendered in that benefit of the defendant. Why isn't that just an ordinary Quantum Merriwood claim? Because the foundation was not under a reasonable expectation that the participants would be paid. That's a defense on the merits, though. That's not a dismissal. Well, it's an element of the claim that I think is appropriate to be resolved on a motion on the pleadings. It would be a grave policy error to use the concept of class actions to enforce charitable trust. It would divert the scarce resources of the foundations to litigation and salary and attainment of attorney's fees. Thank you. Thank you. Your Honor, I'd just like to respond briefly to a couple of points. Again, counsel is not able to identify a segregated trust race. What we're really talking about here, again, is a promise. And that promise did create reasonable expectations of Quantum Merriwood. That's why my clients did the work and put so much time into it, is because they thought that they were going to be able to create a substantial plan that could bring in resources from all over. And that work requires, you know, housing analyses, all different kinds of analysis of the kind that had never been done. What was also unique about this program was it was the first time that actually grassroots was empowered. They weren't going through the cities or the governmental structures. These were farm workers and people like that doing planning for the first time that, you know, truly had the expectation that something would come from their efforts. And with respect to the policy argument, you know, I think what the foundation, in fact, is arguing is that they should be exempt from contractual law simply because they're a foundation. It doesn't matter if you're a foundation, Bill Gates, whomever. If you make a promise the other person relies on and acts on it, that promise should be enforced. And that's what we're really talking about here is breach of a promise. All right. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning and for this week. And the Court stands adjourned. All rise. This Court for this session stands adjourned. Thank you.
judges: Schroeder, Goodwin, Graber